## BREHM *vs.* THE GREAT WESTERN RAILWAY COMPANY.

Although the mere fact that a person is injured, while being transported in a rail road car, does not impose upon the rail road company the burden of disproving negligence, yet the presumption of a want of care may arise from circumstances attending the injury; and whenever such a state of things exists, the onus is upon the company to show that the injury did not result from any negligence on its part.

Accordingly, where a train of cars upon the defendant's road, in which the plaintiff was a passenger, was, in consequence of an embankment having been swept away or submerged, plunged into a gulf of some forty feet in depth, and the plaintiff seriously injured; *Held* that these facts being shown to exist, the presumption of negligence on the part of the defendant necessarily arose; and that it required evidence on the part of the defendant to overcome that presumption and establish affirmatively that no negligence, on its part, existed to which the injury could be attributed. MORGAN, J. dissented.

*Held,* also, that it was a question for the jury to decide, upon the whole evidence, whether the defendant had succeeded in removing the presumption of negligence arising from the circumstances of the case and establishing, clearly, that the accident arose either from causes inexplicable, and involving no responsibility on its part; or from the hidden forces of nature, and the interposition of a superior power which no care, skill or precaution on its part could avert or control.

That the refusal to charge that if the injury was caused, in part, by an un-

Brehm *v.* The Great Western Railway Company.

foreseen cause, and in part by a cause attributable to negligence, the plaintiff could not recover, was not a ground of exception. If there is a proximate and discoverable cause, which may have produced the injury, and which the evidence will warrant the jury in finding was sufficient for that end, it in no respect conduces to the defendant's impunity that another cause existed which was perhaps adequate to the production of the result.

That the judge was not bound to charge that if the defendant employed proper persons to construct and protect the embankment and they were guilty of no negligence in the performance of their duties, the plaintiff could not recover ; there being no such ground of exemption, known to the law.

That in refusing to charge that the plaintiff could not recover unless, before the accident, there was some apparent source of danger to the embankment, which it was the duty of the defendant to provide against or remove ; and in charging that under such a condition of things the defendant would not be chargeable with negligence, the judge committed no error

That on the trial of such action the declarations of the engineer of the rail road company, made while actually engaged upon the work, and in respect to its proper construction, were in substance a part of the *res gestæ,* and were therefore admissible in evidence.

Although great respect should be paid to the opinions of scientific witnesses respecting the cause of an accident, yet they are no more *controlling* than are those of any other class or body of men, when speaking upon subjects which lie within the range of common observation and experience.

APPEAL from a judgment entered at a special term upon the verdict of a jury, after a trial at the circuit, and from an order made at a special term denying a motion for a new trial. The action was brought to recover damages sustained by the plaintiff in consequence of an accident occurring upon the railway of the defendant, on which he was a passenger, in March, 1859. The complaint alleged that the defendant had been, and still was, a foreign corporation, doing business, having agents and owning property within this state, under the corporate name of "The Great Western Railway Company," and was and is the owner and proprietor of a certain rail road or railway called The Great Western Railway, constructed and extending across the province of Upper Canada or Canada West, from a point at or near Windsor on the Detroit river, in Canada aforesaid, to a point at or near Niagara city on the Niagara river, in this state, together with the track, rails and other fixtures, locomotives, carriages and

Brehm *v.* The Great Western Railway Company.

other appurtenances and property belonging and pertaining thereto; and was and is using the same in conveying passengers between the points aforesaid, for hire and reward. That being such owner and proprietor of the same, and using the same for the purposes aforesaid, the defendant, on or about the 19th day of March, 1859, at Windsor aforesaid, received the plaintiff as a passenger on board one of said carriages, being one of a train of said carriages, drawn by one of said locomotives, propelled by the use and power of steam, to be by the defendant carried therein over said railway upon a certain journey, and between the points aforesaid, for hire and reward to said defendant; and it thereby then and there became and was the duty of the defendant to have and keep the said railway, its fixtures, appurtenances and property aforesaid, in good repair and condition, and to run said locomotive, and to draw said train and carriage with care and skill, and to carry the plaintiff in said carriage on said journey safely. Yet the defendant, not regarding its duty in that behalf, did not use due and proper care and skill, neither in constructing or keeping said railway in a proper manner and in good order and repair, nor in keeping said railway, its appurtenances and fixtures secure or in good order and condition, nor in running said locomotive or running said train or carriage, wherein the plaintiff was a passenger. But on the contrary the defendant, its agents and servants so carelessly, negligently and unskillfully constructed and managed said railway, its fixtures, appurtenances and the property aforesaid, and the locomotive, train and carriage aforesaid, that on the day and year aforesaid, to wit, at or near Dundas, in Canada aforesaid, by and through the carelessness, negligence, unskillfullness and improper conduct of said defendant, its agents and servants in that behalf, said railway, fixtures, appurtenances and property became and were left out of repair, the track and rails thereof removed and out of place, and said locomotive, train and carriage were violently precipitated into a gulf or opening across said track, and was sud-

Brehm *v.* The Great Western Railway Company.

denly and violently stopped, crushed and jammed together ; and said plaintiff sitting, being and being carried in said carriage as aforesaid, was thereby then and there suddenly and violently thrown from his seat and jammed against and crushed between and among the sides, seats and fixtures and fragments of said train and said carriage, whereby the plaintiff's foot was jammed, his leg badly bruised, his head badly cut, and his chest crushed, the bone thereof was fractured, his arm and face badly crushed and bruised, and his lungs and other vitals and other parts of his body badly and permanently injured, and the plaintiff put in imminent danger of his life, and delayed upon his said journey and exposed to the inclement weather ; and he was and is otherwise hurt, bruised, wounded, crippled and injured, insomuch that he thereby became and was and from thence hitherto has been and still is sick, sore, lame, crippled and disordered, and has from thence hitherto suffered and underwent great pain, and has thence hitherto been confined and unable to attend to his ordinary business ; and has thence hitherto been obliged to and has necessarily expended large sums of money and incurred large debts for necessary surgical and medical aid and attendance, and for nursing and other assistance. And has sustained damages by reason of the premises to the amount of $10,000. And he demanded judgment against the defendant for that sum and costs of the action.

The answer was a general denial of the matters stated in the complaint. The action was tried at the Onondaga circuit in September, 1860, before Justice MULLIN and a jury. The material facts appearing at the trial, in relation to the nature and causes of the accident, &c. are sufficiently set forth in the opinion of the court. The plaintiff was examined as a witness, and he and other witnesses testified to the extent and severity of the injuries received by him.

Charles R. Babbitt, a witness for the plaintiff, testified as follows : " I reside at Rochester ; I am an engineer, have been eighteen years ; I was employed as resident engineer

during the construction of defendant's rail road from three miles west of Hamilton to the Grand river, and on this section ; went into the company's employ in 1847 ; and was in their employ again from 1850 to 1854. When I first went on to the road Mr. Stuart was chief engineer ; Mr. Benedict was chief engineer from the fall of 1850 to the fall of 1852. John T. Clark was Benedict's successor ; and Mr. Clark and I left about the same time, in the summer of 1854. I aided in making the embankment in question ; it was commenced under Benedict and finished under Clark. A tressle work was first raised, over which the cars ran ; think we commenced filling in the soil before Benedict left. The culverts were first located by George Cole, resident engineer ; he located three, the east and west one in the neighborhood of the break." The plaintiff's counsel then asked the witness the following questions : " What did Mr. Benedict say about the culvert ?" To this question the defendant's counsel objected, upon the ground that the question was incompetent, and called for hearsay, incompetent and irrelevant testimony ; but the court overruled the objection and admitted the testimony, and the defendant's counsel excepted. The witness in answer to the question said : " Benedict told me to omit the third culvert, on the ground that the water could be carried to the east culvert by a ditch ; he said a ditch should be cut through a spur of the mountain. The location of the middle culvert was put just west of the spur. The ditch was not made while I was there."

The plaintiff offered to show that since the accident the defendant had made a ditch to carry the water to the east culvert. Objected to by the defendant's counsel as immaterial. Objection overruled, and the defendant's counsel excepted, and the witness testified.

The proofs being closed, the defendant's counsel moved for a nonsuit upon the whole evidence, upon the ground that no cause of action had been established, and particularly that there was no sufficient evidence to go to the jury that the

Brehm *v.* The Great Western Railway Company.

accident was the result of any neglect on the part of the defendant. But the court denied the motion, and the defendant's counsel excepted. The cause was then submitted to the jury by counsel for the respective parties. The court charged the jury, among other things, that the plaintiff could not recover, unless the jury found that his injuries were caused by some negligence of the defendant; but if the injuries were produced by the defendant's running its train into a breach in its road, where an embankment belonging to the defendant's road had given way, these facts, standing alone and unexplained, would be prima facie evidence of such negligence. To this charge the defendant's counsel excepted. The court further charged the jury that the building of a new ditch by the defendant, since the accident, was a circumstance which the jury might take into account in determining the question, whether the water standing on the side of the bank had any agency in producing the accident to the bank. But the construction of the ditch was only evidence of the opinion of the officers of the company as to the water standing upon the bank being the cause of the slide, and the weight to be given to it would be controlled by the other evidence in the cause. To this charge, and to each proposition thereof, the defendant's counsel excepted. The counsel for the defendant then requested the court to charge the jury, that if there was an extraordinary and unprecedented storm, which could not be foreseen, and if this in part produced the accident, aided by a cause which could have been foreseen and prevented, but which alone could not produce the accident, then the plaintiff could not recover. The court refused so to charge, and the defendant's counsel excepted. The counsel for the defendant then requested the court to charge the jury, that the construction of the ditch on the north side of the bank, after the accident, was not an admission by the company that at the time of the accident a ditch was necessary to protect the bank from the water lying against it, nor does it bear upon that fact. The court

refused so to charge, and the defendant's counsel ·excepted.
The counsel for the defendant then requested the court to
charge that, upon the whole evidence, it was not affirmatively
proved what was the approximate cause of the sliding of the
bank, and therefore the plaintiff could not recover.   Refused,
and exception by the defendant's counsel.   That, upon the
whole evidence, it was not affirmatively proved that the sliding
of the embankment was owing to any negligence of the defend-
ant, and therefore the plaintiff was not entitled to recover.
Refused, and exception by the defendant's counsel.   That al-
though the accident may have revealed the fact that there
was, before it occurred, a source of danger to the embank-
ment, there was not proof sufficient to show that prior to
the accident there was any apparent source of danger to the
embankment, which it was the duty of the defendant to pro-
vide against or remove.   Refused, and exception by the de-
fendant's counsel.   That the proof showed that this accident
was the result, not of causes within the ordinary experience
of mankind in the region where it occurred, but of an extra-
ordinary storm, a convulsion of nature, such as could not
rationally be .expected to have been foreseen or provided
against, and therefore the plaintiff could not recover.   Re-
fused, and exception by the defendant's counsel.   The defend-
ant's counsel then requested the court to charge the jury that
the plaintiff could not recover, unless he had proved affirm-
atively what was the proximate cause of the giving away
of the embankment.   But the court refused so to charge,
unless modified by adding to said proposition, that if the ac-
cident was caused by the giving away of the bank, that was
prima facie evidence of negligence.   And the court charged
the proposition as modified.   To which refusal and charge,
and each of them, the defendant's counsel excepted.  Also
to charge that the plaintiff. could not recover, unless he
proved affirmatively that the accident was owing to some ·
neglect of the defendant.   The court refused so to charge,
unless modified according to the last proposition; and the

Brehm *v.* The Great Western Railway Company.

defendant's counsel excepted. Also to charge that the occurrence of the accident afforded no presumption of negligence. The court refused so to charge, and the defendant's counsel excepted. Also to charge that the plaintiff could not recover, unless he showed in what the negligence consisted. But the court refused so to charge, and the defendant's counsel excepted. Also to charge that the plaintiff could not recover if the jury differed as to the cause of the accident, or the character of the neglect. But the court refused so to charge, unless modified by adding : If the jury cannot agree that the defendant was guilty of some act of negligence, they cannot find for the plaintiff ; and the defendant's counsel excepted. That the plaintiff could not recover, unless the jury could all agree in attributing the accident to the same cause or causes, and the same neglect. But the court refused so to charge, and the defendant's counsel excepted. Also to charge that the plaintiff could not recover, unless before the accident there was some apparent source of danger to the embankment, which it was the duty of the defendant to provide against or remove. But the court refused so to charge, unless modified by striking out the words "the plaintiff cannot recover," and substituting the words " the defendant is not chargeable with neglect," and charged the jury according to the proposition as modified. To which refusal and charge, and each of them, the defendant's counsel excepted. Also that the plaintiff could not recover, unless before the accident there was some apparent subsisting cause, sufficient to produce the accident, which it was the duty of the defendant to provide against or remove. But the court refused so to charge, except by modifying the proposition the same as the last one, and charged as so modified ; and the defendant's counsel excepted. The defendant's counsel also requested the court to charge the jury, that even if the jury should find that a pool of water had collected above the embankment, and that the slide was occasioned by it, and that therefore, since the accident, it would be negligent to suffer

a similar pool to lie against the bank, yet, if prior to the accident it was not known that such a cause could produce such an effect, the plaintiff could not recover. The court refused so to charge, unless modified in the same manner as in the last two propositions, and charged as modified; and the defendant's counsel excepted. Also to charge that if there was a reasonable doubt remaining in the minds of the jury as to the cause of the accident, or as to its having been the result of the negligence of the company, the plaintiff could not recover. Refused by the court, and exception by the defendant's counsel. Also to charge that the question, what caused this accident, was under all the circumstances of the case a question of science; and if the jury believed the testimony of the scientific witnesses, who stated that the cause of the accident could not be known with certainty, and that the cause thereof was doubtful, the plaintiff could not recover. But the court refused so to charge, and the defendant's counsel excepted. Also to charge that the question, what caused the slide, was a question of science; and if the jury believed the testimony of the scientific witnesses, who stated that the accident could not have been caused by the action of the pool upon the embankment, the plaintiff could not recover. Refused, and exception by the defendant's counsel. Also to charge that if the jury believed that it was rational to suppose that the accident might have been the result of any other cause than the pool soaking into and carrying away the embankment, then the plaintiff could not recover. Refused, and exception by the defendant's counsel. Also to charge that the question, what caused this slide, was a question of science; and if the jury believed the scientific witnesses, who stated that under all the conditions proved to have existed at the time, they would not have apprehended danger to the embankment, the plaintiff was not entitled to recover. Refused, and exception. The defendant's counsel then requested the court to charge the jury, that if the defendant employed proper persons to construct and protect the embankment, and

Brehm *v.* The Great Western Railway Company.

they were guilty of no negligence in the performance of their duties, the plaintiff could not recover. But the court refused so to charge, and the defendant's counsel excepted. The defendant's counsel then requested the court to charge the jury that, though under ordinary circumstances, and in cases of ordinary embankments, the action of water upon them is a matter within the observation and knowledge of many practical men; yet, considering the extraordinary size and character of this embankment, and other circumstances of the case, the question, what caused this accident, and whether it was occasioned by the negligence of the defendant, must be far better understood by scientific witnesses, and the jury should give a controlling influence to their opinion in coming to a conclusion. But the court refused so to charge, unless modified by striking out the word "controlling," and in that form charged the proposition ; to which refusal and charge, and each of them, the defendant's counsel excepted. The defendant's counsel then requested the court to charge the jury, that it was affirmatively shown that this bank was properly constructed, and of proper materials; also that there was no apparent cause of danger, which it was the duty of the company to prevent; also that even now the most competent engineers did not know the cause of the accident, or how to provide against it, and consequently the plaintiff could not recover. But the court refused so to charge, and the defendant's counsel excepted. The jury, thereupon, found a verdict in favor of the plaintiff for $5000.

It was conceded, for the purposes of the application for a new trial, and of any appeal in this cause, that the plaintiff sustained the injuries as charged in the complaint, and that the damages were not excessive. The defendant appealed.

*E. C. Sprague,* for the appellant.

*D. Coates,* for the respondent.

BACON, P. J. It will enable us better to appreciate the exceptions taken to the charge and refusal to charge by the justice who tried this cause, if we disembarrass the case of all questions excepting the one on which the cause really turned, and which necessarily controlled the verdict. By doing so, we shall see that there was in truth but one point upon which all the material testimony converged, and that if the charge in its leading and vital principle was right, the verdict can be sustained, and the minor and merely subsidiary exceptions will easily resolve themselves, and are indeed worthy of no special consideration. There is no dispute, in the first place, that the plaintiff was a passenger in the cars of the defendant, having duly paid his fare, and entitled himself to be safely transported on their rail road route upon the occasion in question. There is no dispute as to the fact that by the casualty that occurred at the point where the train plunged into the vortex made by the giving way of the embankment and the destruction of the track, the plaintiff was most seriously and permanently injured ; and no question is made that the damages awarded by the jury, in case the cause of action is sustained, are excessive.

In addition to this, the case involves no inquiry in respect to any imputed negligence on the part of the plaintiff, by which the injury was caused, or which contributed to the injury ; nor is any complaint made that the train was run at an improper rate of speed, or in an imprudent and reckless manner, while passing the point where the accident occurred. The allegations of the complaint are somewhat general and vague, and impute negligence to the defendant in respect to the management of its railway, its fixtures, appurtenances and property, by which they were left out of repair, and the track and rails out of place, and thereby the train being precipitated into a deep gulf the plaintiff was crushed, bruised and wounded, and thus suffered the injuries complained of. As disclosed by the testimony, the precise gravamen of the complaint is, that by the careless and negligent construction

Brehm *v.* The Great Western Railway Company.

of the embankment upon the defendant's railway, the want of sufficient culverts and ditches to carry off the water to which it was exposed from its peculiar position, and especially by suffering the water to accumulate above and rest upon and against the embankment and permeating and saturating the bank, it gave way, and carrying off both embankment and track, occasioned the disaster by which the plaintiff suffered, and for which the action was brought. This is the precise point upon the solution of which the question of the defendant's liability depends.

It is only necessary to state that about one o'clock on the morning of the 19th of March, 1859, the train of the defendant coming east, on the route from the city of Hamilton, was suddenly precipitated into a breach in the road made by the giving way of an embankment at a point where a train had passed in safety about two hours previously. There was nothing to indicate danger, or excite alarm, just before the casualty. The breach was about 45 yards in length, and the southerly side was entirely gone. The embankment was made against the face of a mountain, the upper or northern side being about 25, and the lower about 60 feet above the natural level. There was one large culvert under the track, about 150 yards east of the spot where the embankment gave way, and another of equal capacity a considerable distance west of it, and about the center a sort of blind drain had been originally laid, but which as it appeared at the time had been substantially filled up and obstructed. Near the breach there was a hollow, which collected and retained water, which lay against the bank, of the average depth of about 2 or 2½ feet, and as described by some of the witnesses, some 50 feet in length by 10 or 12 in width. A heavy and tempestuous rain storm had prevailed from about 6 o'clock in the evening before, and the weather had been wet for some days previously, and the frost was beginning to come out of the ground.

At the close of the whole testimony, the defendant's coun-

sel moved for a nonsuit, upon the ground that no cause of action had been established, and no sufficient evidence had been given that the accident was the result of any negligence on the part of the defendant. The motion was denied, and the cause was then submitted to the jury, and the first proposition propounded to them by the court was, that the plaintiff could not recover unless the jury found that his injuries were caused by some negligence of the defendant; but if the injuries were produced by the defendant's running its train into a breach in its road where an embankment belonging to the road had given way, these facts, standing alone and unexplained, would be *prima facie* evidence of such negligence. To this the defendant excepted, and the case, as I view it, turns upon the propriety of this instruction. It is substantially a question upon which party the burden of proof is cast.

It is undoubtedly true that in some of the earlier cases, both in England and in this country, the rule has been stated, in an unqualified form, that in case of alleged injuries by stage coach or rail road casualties, the presumption of negligence arises from the mere fact that an accident has occurred. Such was the case of *Christe* v. *Griggs*, (2 *Camp.* 79,) where Sir James Mansfield remarked that the plaintiff had made out his case *prima facie* by proving his going on the coach, the accident, and the damage he had suffered. So in the case of *Stokes* v. *Saltonstall*, (13 *Pet.* 181,) the instruction to the jury was that the fact that the coach was upset and the plaintiff injured, was *prima facie* evidence that there was carelessness, or want of skill on the part of the driver, and threw upon the defendant the burden of proof that the accident was not occasioned by the driver's fault, and this instruction was sustained by the court. But in regard to these and the like cases, it is remarked by Judge Selden that the other facts developed in them demonstrated negligence, and that it might well enough have been said that, under the circumstances proved, there was sufficient *prima facie* proof

Brehm *v.* The Great Western Railway Company.

of negligence.    As an abstract proposition, such a charge, undoubtedly, cannot be sustained.

What then is the proper instruction in a case like this, and how is the proposition to be qualified so as to impose upon the defendant the obligation to disprove negligence, when the burden has been shifted from the shoulders of the plaintiff? As derived from the recent cases, I think it is this: that although the mere fact that a person is injured while being transported in a rail road car, does not impose upon the rail road company the burden of disproving negligence, yet that the presumption of a want of care may arise from circumstances attending the injury; and whenever such a state of things exists, the onus is upon the company to show that the injury did not result from any negligence on its part.

The proposition is laid down in substantially these terms by Ruggles, J. in the case of *Holbrook* v. *The Utica and Schenectady Rail Road Company,* (2 *Kernan,* 236,) where, after stating the general rule pertaining to the proof of negligence, he adds that " it generally happens that the same evidence which proves the injury done, proves also the defendant's negligence, or shows circumstances from which a strong presumption of negligence arises, and which casts on the defendant the burden of disproving it."

The case of *Curtis* v. *Rochester and Syracuse Rail Road Company,* (18 *N. York Rep.* 534,) presents the point still more clearly.    In that case it appeared that the accident by which the plaintiff was injured, was occasioned by the running off of the cars at a switch, and the proof left it somewhat uncertain whether the switch was deranged, or the accident resulted from the spreading of the rails.    The judge charged the jury that the fact that *the* accident occurred was of itself presumptive evidence of negligence on the part of the defendant.    In the opinion of Judge Selden he dissents from this, if it was intended to express the abstract proposition that such a conclusion may always be drawn from the fact of the occurrence of an accident.    But in respect to the lia-

bility of rail road companies, he holds that they are bound to see that the road, and all its appurtenances, are in perfect order, and free from any defect which the utmost vigilance aided by the highest skill can discover and prevent; and that consequently whenever it appears that the accident was caused by *any deficiency in the road itself,* the cars, or any portion of the apparatus belonging to the company, and used in connection with its business, a presumption of negligence on the part of those whose duty it is to see that every thing is in order, immediately arises, it being extremely unlikely that any defect should exist of so hidden a nature that no degree of care or skill could have foreseen or discovered it. In the case then before the court he deemed it immaterial from which of the two alleged causes the accident occurred, since in either case the presumption of negligence would arise; and he held that the judge was fully warranted in instructing the jury, that the occurrence of the accident, *under the circumstances disclosed by the evidence,* authorized the presumption of negligence, and that the charge as thus interpreted was right.

The same principle is alluded to and reiterated in the case of *Johnson* v. *Hudson River Rail Road Co., (20 N. Y. Rep.* 65,) although the principal question there turned upon the alleged negligence of the plaintiff. In relation to the rule on that subject, the court say that it cannot be affirmed as a universal proposition, that the plaintiff is bound to prove that he was not negligent, or the defendant to prove the contrary, yet that the character of the defendant's negligence may be such as to prove the whole issue, and in such a case the plaintiff would only be obliged to show such a state of facts, and then the onus is upon the defendant to disprove negligence.

The rule thus established was properly applied to this case. If there is any duty imperatively incumbent upon a rail road company, it is to have their track in a sound and safe condition. It is perhaps more important than that their rolling

stock or running apparatus should be perfectly reliable and in the most complete order. If it has no track, or a chasm is suffered to exist in it, it is either incapable of performing the duties it has contracted to discharge, or it puts the limbs and lives of its passengers in jeopardy. In this case, instead of carrying the plaintiff safely over its road as the defendant contracted to do, he is, with the entire train, plunged into a gulf of some 40 feet in depth, and the track wholly submerged or swept away. The moment such a state of things was shown to exist, the presumption of negligence on the part of the defendant necessarily arose, and it required evidence on the part of the defendant to overcome that presumption, and establish affirmatively that no negligence existed on its part to which the accident could be attributed. The charge, consequently, on this branch of the case, and the various refusals to charge as requested by the defendant's counsel, in those propositions on the part of counsel which sought to reverse this rule, and throw the entire burden of proof upon the plaintiff to establish negligence by other and independent testimony, were right, and in accordance with the well settled and recognized rule of law.

The principle of law having thus been correctly laid down to guide the jury, it obviously became a question for them to decide, upon the whole evidence, whether the defendant had succeeded in removing the presumption of negligence arising from the circumstances of the case, and establishing clearly that the accident arose either from causes inexplicable and involving no responsibility on its part, or from the hidden forces of nature, and the interposition of a superior power which no care, skill or precaution on its behalf could avert or control. The precise issue was, whether the plaintiff had shown that the injury of which he complained was caused by some negligence attributable to the defendant and involving liability on its part, for the consequences. The theory of the plaintiff was that the embankment, constructed upon the side of a mountain, composed of porous materials, required not

only great strength, but a thorough and complete drainage to carry off the water which would necessarily accumulate and press upon the structure, and soak into and saturate it if suffered to stagnate and rest against the bank, and that all these obvious safeguards and appliances were neglected and led to the catastrophe. The defendant, on the other hand, claimed that ample drainage was provided; that the structure was of sufficient strength, as had been tested by the time it had stood unaffected and undisturbed; and that conceding that a small pool of water had accumulated upon the northerly side, it could not possibly occasion the slide which occurred, and which was attributable to some hidden cause unknown to common experience, and incapable of detection by scientific skill; or by a great and unprecedented convulsion of nature which could neither have been foreseen nor provided against.

These were the grounds taken by the parties respectively, and properly urged upon the consideration of the jury; and whatever we may think of the comparative strength of the testimony, in my opinion it would be neither wise nor right to overrule their judgment, and hold as matter of law that the plaintiff had not made out any case whatever for a recovery, or that the testimony of the defendant is so clear and overwhelming that it becomes our duty to set aside the verdict as the result of either gross ignorance, partiality or corruption. If the verdict had been the other way, I should certainly not be inclined to disturb it, for it cannot be disguised that from the men of science and skill who testified on the part of the defense, an array of evidence was presented which might well have warranted a different conclusion. It is a subject of complaint, indeed, and one of the exceptions on the part of the defendant is, that the judge did not charge the jury that they should give "a controlling influence to the opinions of scientific witnesses in coming to a conclusion." This specific instruction was refused, but the judge acceded to the request, except so far as he was required to instruct the

Brehm *v.* The Great Western Railway Company.

jury to make the evidence " controlling," and in this modified form the charge was given. And this was clearly right.

Great respect should be paid to the opinion of such a class of witnesses, but they are no more " controlling" than those of any other class or body of men when speaking upon subjects which lie within the range of common observation and experience. Men of science may as well be mistaken as men in the ordinary walks of life, and practical men have not unfrequently achieved what science had demonstrated to be unattainable.

Science proved that the Atlantic could never be crossed by a steam vessel, but a bold sailor, aided by a skillful engineer and a faithful and industrious stoker, solved the problem, by doing the thing which the theorist pronounced impracticable. It has been very well remarked that there are some points on which men of fair understanding, who have had good opportunities for observation, will not readily surrender their convictions even to the opinions of men of higher reach of mind, and whose special pursuits may have made them more conversant with such subjects. " A little method, it is said, is worth a great deal of money, and with equal truth it may perhaps be said, that in some questions which lie confessedly within the range of professional skill and experience, a little common sense may be worth a great deal of science." There is no rule of law that requires jurors to surrender their judgments implicitly to, or to give a controlling influence to the opinions of scientific witnesses, however learned or accomplished they may be, and however they may speak with conceded intelligence and authority, aided by the accumulated results of a long experience.

These views dispose of all that seems to be essential in this case; but there are some two or three collateral questions presented by the counsel upon his points, that may deserve a brief consideration.

The exception to the refusal to charge, that if the injury was caused in part by an unforeseen cause, and in part by

a cause attributable to negligence, the plaintiff could not recover, cannot be sustained. If there is a proximate and discoverable cause which may have produced the injury, and which the evidence will warrant a jury in finding was sufficient for that end, it in no respect conduces to the defendant's impunity that another cause existed which was perhaps adequate to the production of the result. It is, in principle, like the case of *Chapman* v. *New Haven Rail Road Co.* (19 *N. Y. Rep.* 341,) where an action was sustained against the defendant for an injury occasioned to the plaintiff by a collision between a train of cars upon its road and one upon the Harlem rail road, and which would not have occurred but from the negligence of the latter road, in the cars of which the plaintiff was a passenger; thus, in effect, holding that although the injury was the result of two concurring causes, one party in fault is not exempted from full liability for the injury, although another party was equally derelict.

The judge was asked to charge that if the defendant employed proper persons to construct and protect the embankment, and they were guilty of no negligence in the performance of their duties, the plaintiff could not recover. This was refused, and the defendant excepted to the refusal. There is no such ground of exemption known to the law. If this were so, all that an employer would be required to show, to exempt him from liability, would be that he had used and employed men of good reputation and acknowledged skill in their particular department. Besides, the proposition contained a "*petitio principii;*" for the very question is whether there was or was not negligence in the construction and protection of the work, and no reputation of engineers, or contractors will be taken as sufficient to dispose of that issue. Like any other servants of the company they may fail in their duty, and if they do, their employers must answer for the consequence.

In the case of *Hegeman* v. *Western Rail Road Corporation,* (3 *Kern.* 9,) the defendant employed a manufacturer

of acknowledged skill and high reputation, to construct the axles of their cars, from the fracture of one of which the injury resulted in that case. The court held that although the axle was procured from a manufacturer of skill and reputation, and was formed from the very best material, and although there was no external indication of any imperfection in either the material or the workmanship, yet if there was any test known to men in the business which had not been applied to the work, and an injury resulted in consequence, the company was liable. This case has always been considered as carrying the doctrine of liability of rail road corporations to the extremest verge of the law, but acknowledging as we do its authority, it decides more than enough to dispose of this exception.

The defendant's counsel excepted to the modified form in which the judge charged the several propositions at folios 161, 162 and 163 of the case. He was asked to say that upon the assumption that a certain state of facts was found to exist, "the plaintiff could not recover." He declined to charge in that form, but did charge that under such a condition of things as the proposition presented, the defendant "would not be chargeable with negligence." There is no ground to complain of the charge in this form. He had already instructed the jury, that in order to entitle the plaintiff to recover, it must be proved that his injuries were caused by some negligence of the defendant. To tell them then, that if they found the existence of certain facts, the defendant was not chargeable with negligence, was to say that, in that event, the plaintiff could not recover. The two propositions, though varying in form, are in substance and effect identical, and it cannot be supposed that the jury were in any respect misled by the language of the court.

There is nothing in the exception taken on the trial to the reception of the evidence as to the declarations of the engineer of the defendant. These declarations were made by the agent of the defendant while actually engaged upon the

.work, and in respect to its proper construction, and .were thus in substance a part of the *res gestæ*. Equally unfounded is the objection to the evidence as to the construction of a new ditch, after the accident. It had some bearing upon the alleged deficiency of the work. The charge of the judge upon this point was properly guarded, and the jury. were told just how much weight was to be given to this evidence, and that it was to be controlled by the testimony in the cause.

These are all the points that seem to me to require discussion, and the result is that the case was fairly put to the jury, and that the judgment, together with the order denying a new trial, at special term, should be affirmed.

ALLEN and MULLIN, Justices, concurred.

MORGAN, J. dissented. -

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 1, 1861. *Bacon, Allen, Mullin* and *Morgan*, Justices.]