## Reed *vs.* The New York Central Railroad Company.

If a railroad company lays its rails in such a manner that within the ordinary extremes of cold and heat they expand so as to be pressed out of place thereby, that of itself is negligence, for which it is liable in case of a personal injury sustained by a passenger, to the same extent as if it were caused by defective ties.

Where it was proved, in an action against a railroad company to recover damages for an injury occasioned by its negligence, that the contraction and expansion of rails, of the length of those used, between the ordinary extremes of heat and cold, during the year, is from three-eighths of an inch to one-half of an inch in each bar, and that the rails upon the defendant's road were laid with spaces of not more than one-fourth of an inch between them; *Held* that the jury were authorized to find that the rails were negligently laid.

It is the duty of a railroad company to provide, first, for the safety of its passengers; and if rails of twenty-one feet in length will not pass the trains smoothly over the joints, unless so laid as to be liable, in hot weather, to displacement, then they should be shortened, or at all events so secured as not to be subject to such derangement.

Whether an accident, by which cars are thrown from the track and upset, is caused by the expansion of the rails, from heat, or the shoving forward of the rails and throwing them out of place by running all the trains upon the track in one direction, or by both causes united, neither cause furnishes a defense to an action brought by a passenger sustaining an injury.

Where a railroad company knows that, as its road is constructed and operated, an accident may happen from either or both of those causes, it is its duty to effectually guard against it, by so fastening the rails that they will not be liable to be pushed forward by the running of the trains; or if that cannot be done where (in case of a double track) the trains are running the same way all the time, then it should run them on the same rails, sometimes one way and sometimes the other.

Where the jury, in an action against a railroad company for personal injuries occasioned by its negligence, found, upon conflicting evidence, that the plaintiff was permanently injured in his spinal cord; *Held* that the court should not overrule them; and that if they were correct in that finding, a verdict in favor of the plaintiff for $4000 was not excessive in amount.

Where, in such an action, the court charged the jury, (1.) That to entitle the plaintiff to recover, the burden of proof was on him to show that the defendant was guilty of negligence; (2.) That such negligence caused the injury; (3.) That the fact that an accident occurred was not negligence, unless the nature of the accident was such as to show that it could not have happened without such negligence; and (4.) That if it appeared from the evidence that the accident might have happened by some cause which the company

could not guard against, then it was incumbent on the plaintiff to show that it did not occur from such cause, but from the negligence of the company; *Held* that the charge was quite as favorable to the defendant as the law would justify.

A charge, in such a case, that the burden of proof is upon the defendant, and that to relieve it from liability it is incumbent upon the company to show that the accident happened from causes over which it had no control, is clearly within the rules applicable to such cases.

Proof of the bad condition of the railroad, in the immediate vicinity of the place where the accident occurred—as that the rails were uneven, and the ties defective—is admissible for the purpose of showing the negligence of the company.

When one party gives in evidence the act of his opponent, it is always competent for the other party to prove what he said, at the time of the act done, to qualify the effect which would be given to the act, if standing alone. When a party has given in evidence the act of his opponent, he has no right to complain that what was *said* is admitted, as well as what was *done.*

APPEAL from an order of the special term denying a new trial.

The action was brought to recover damages for injuries which the plaintiff claimed to have sustained by the negligence of the defendant, while he was a passenger on one of its trains. The issue was tried at a circuit court, before a jury, and a verdict was rendered in favor of the plaintiff for $4000. The defendant moved, at a special term, for a new trial, upon a case and exceptions, claiming that the court erred in admitting improper testimony offered for the plaintiff, and in rejecting proper testimony offered for the defendant, and also in the charge to the jury. And also upon the ground that the verdict was against evidence, and that the damages were excessive. The court denied the motion, and the defendant appealed.

The material facts are stated in the opinion.

*D. J. Mitchell,* for the appellant.

*Charles Andrews,* for the respondent.

Reed *v.* New York Central Railroad Company.

*By the Court,* FOSTER, J.   The action was tried in September, 1866, and it appeared that on the 17th day of June, 1865, the plaintiff was a passenger on a train of the defendant, going west to Syracuse, where he resided.   The train was a very large one, and when it was from one mile and a half to two miles easterly of Oneida station, and running at the rate of from twenty-five to thirty miles per hour, the two rear cars of the train, in the foremost of which the plaintiff was seated, were thrown from the track and down an embankment, and upset, and the plaintiff, with other passengers was injured.   For a time he was insensible. There was a scalp wound on the back of his head.   The bell-cord was around his neck, and his neck was injured thereby; and he had a contusion on the right of, and about an inch from, the back bone, in the small of the back.

No claim was made that the plaintiff was negligent; and the first question is, was the accident and injury caused by the negligence of the defendant.

The plaintiff gave evidence to show that some of the ties, upon which the rails were laid, at the place of the accident, were in bad condition.   That some of them were rotten, so that they would not hold the spikes which were used to fasten the rails to the ties.   This testimony was controverted, and to some extent contradicted, by testimony offered on the part of the defendant, and it also gave testimony to show that the accident was caused by the expansion and crowding of the rails of the road.

There may be doubt, upon the testimony, whether the accident was caused by the defect of the ties or not, but the jury, for aught that appears, found them defective, and that such defects caused the disaster; and there is no such preponderance of evidence in favor of the defendant on that question, as would justify us in granting a new trial.

But upon the supposition that the accident was caused by expansion, was the defendant any the less negligent?

It was proved that the weather was hot, at the time in question, though the witnesses do not state what, in their judgment, the degree of temperature was; and there is no evidence tending to show that the heat was extraordinary, or beyond the usual extreme of summer heat, or extremely hot for that time of the year.

Now the laws which control the expansion and contraction of iron are well known to scientific men, who have experimented upon that subject, and are, or should be, well known to those who are employed to lay the track for railroads, over which millions of persons pass every year as passengers. And if a railroad company lays its rails in such a manner that within the ordinary extremes of cold and heat, they expand so as to be pressed out of place thereby, that of itself is negligence for which they are liable, if injury ensue; and in my judgment that theory of the defendant, which was put forth on the trial, is just as fatal to the defense as though the accident was caused by defective ties. But in this case it was proved by the witnesses on the part of the defendant, that the contraction and expansion of rails, of the length of those, between the ordinary extremes of heat and cold, during the year, is from three-eighths of an inch to one-half of an inch in each bar; and it was also proved by the defendant's witnesses that these rails were laid with spaces of not more than one fourth of an inch between them. The jury, therefore, were authorized to find, even if the ties were sufficient, that the rails were negligently laid. Now, it will not do to say that the closer the joints of the rails are, the 'smoother the wheels of the cars will pass over, and that therefore they should be laid as these were; for we must not indulge ease and comfort at the probable expense of life. It is the duty of the railroad company to provide *first for the safety of its passengers*, and if rails of twenty-one feet length (as these were) will not pass the trains smoothly over the joints, unless so laid as to be liable, in hot weather,

to displacement, then they must be shortened, or, at all events, so secured as not to be subject to such derangement.

It was proved, on the part of the defendant, that on double track railroads, as this was, and where all the trains passing one way run on one track, and all those going the other way, run on the other track, the inevitable tendency is to push the rails forward, and to join them together, thus operating, like expansion, to throw them out of place; and that though watchful care is used to readjust them as often as they are disturbed, they are liable, on a hot day, to be so jammed as to throw the track from its bed. And the same witnesses (employees of the defendant) testified that such is not the case with single track roads, where the trains must pass both ways on the same track. And it is claimed that the accident was produced by such crowding forward of the rails, or by such crowding and expansion.

There was no testimony to show whether the rails in question were actually pushed forward or not, and the person who was proved to have the actual oversight at the point in question, of any disturbance of the rail caused by such pushing forward, was not produced as a witness. But whether the accident was caused by expansion or by such shoving forward of the rails, or by both causes united, I am clearly of the opinion that it does not furnish any defense. Upon the evidence, it must be conceded that the defendant knew that as its road was constructed, and operated, either or both might happen; and, therefore, it was its duty to effectually guard against it. It was its duty so to fasten the rails that they would not be liable to be pushed forward by the running of the trains; or if that could not be done, where the trains were run the same way all the time, then it should run them on the same rails, sometimes one way and sometimes the other; for if

a single track railroad can be operated both ways, I know of no reason why a double track road cannot be run in the same way, by changing the course of the trains upon the tracks daily, or less often, as the necessity of the case may require.

It may be difficult for the defendant so to lay its tracks, or so to run its trains that there will be no *liability* to accidents, but it must be done if human skill can accomplish it; and if it is impossible, with the present large and heavy trains and present rate of speed, to do so, then in those respects, however unwilling passengers may be to be transported at a less rate of speed, or however expensive or troublesome it may be to the defendant in other respects to provide for the safety of its passengers, it must be done, for the safety of the passengers is of paramount importance.

The jury were right in finding a verdict for the plaintiff.

Were the damages excessive? They were excessive for any injury which the plaintiff sustained, unless it extended to the spinal cord, as testified to by the plaintiff, and if his true situation in that respect was as he testified, the damages were not excessive.

The evidence to prove such injury was mainly limited to the testimony of the plaintiff himself, and of course was to be received with caution. And some of his acts during the year and three months from the time of the injury to the trial, tended to some extent to render his testimony doubtful. The testimony of the physicians who were called to give opinions, as to whether he had "railway spine" or not, was also conflicting, and the testimony upon the whole was such as, in my judgment, left doubtful the fact whether he had received such injury or not. The jury, however, who saw the witnesses, and could better judge than I can which of them was correct, have doubtless found that he was permanently injured in his spinal cord.

I think we should not overrule them, and if they were correct, the verdict was not excessive in amount.

It follows, if I am right in the foregoing conclusions, that the judge was right in not nonsuiting the plaintiff after all the evidence was closed. Indeed to have granted a nonsuit, as the case then stood, would have been an unwarrantable interference with the province of the jury.

The court charged the jury, as requested by the defendant's counsel: *First.* To entitle the plaintiff to recover, the burden of proof is on him to show that the defendant was guilty of negligence. *Second.* That such negligence caused the injury. *Third.* That the fact that an accident occurred is not negligence, unless the nature of the accident is such as to show that it could not have happened without such negligence; and, *Fourth.* That if it appears from the evidence that the accident might have happened by some cause which the company could not guard against, then it was incumbent upon the plaintiff to show that it did not occur from such cause, but from the negligence of the company.

The court also charged, among other things, that in this case the burden of proof was upon the defendant, and to relieve it from liability, it was incumbent upon the defendant to show that the accident happened from causes over which it had no control. To this part of the charge the defendant's counsel excepted. This question is raised by the points of the defendant, but no argument was made upon it, nor was any special claim made before us that it was incorrect. I think the charge, as a whole, as it appears before us, was quite as favorable to the defendant as the law of the case would justify, and in regard to that part of it excepted to, it was clearly within the rules applicable to such cases. (*Curtis* v. *The Rochester and Syracuse Railroad Co.*, 18 *N. Y. Rep.* 534. *Johnson* v. *Hudson River Railroad Co.*, 20 *id.* 65. *Brehm* v. *Great Western Railroad Co.*, 34 *Barb.* 256.) This rule, as applied between railroad

companies and their passengers, is too familiar to be now questioned.

Several exceptions were taken by the defendant's counsel to the rulings of the court in the admission and rejection of testimony.

The plaintiff offered to prove by a witness, on the stand, the bad condition of the railroad, from a mile west of the place where the accident occurred, all the way to and beyond the place of the accident, in order to show the negligence of the company. This was objected to as immaterial and incompetent. The court overruled the objection, and admitted the testimony, and the witness answered: " We noticed that the rails were rather uneven, up and down the iron rails; as regards the ties I could not say that I noticed anything out of the way; once in a while we came to some that were decayed on the end, but how many of them I don't know; I was not paying particular attention."

Another witness for the plaintiff, who had testified that, soon after the accident, the ties at that place for about six rods had been replaced with new ones, was asked: " How were the ties west of the point where the new ties had been laid, immediately west of that point?" which was objected to by the defendant's counsel, but admitted by the court; to which the defendant excepted, and the witness answered: " This accident brought my attention more particularly to examine the ties than I had examined it at any other time; I found some ties very much decayed, just west of where the accident occurred." These questions are substantially like those which this court has repeatedly held competent, as was the case in *Murphy* v. *N. Y. Central Railroad Co.*, recently decided, and in *Beckwith* v. *The N. Y. Central Railroad Co.*, also decided by this court.

It was proved for the defendant, that in the fall of 1865 the plaintiff helped load flax and clover seed upon a

wagon; and on the cross-examination the witness was asked, "Did he complain about work either time you have spoken of, in the fall of 1855?" This was objected to on the part of the defendant, and admitted by the court, and the defendant's counsel excepted, and the witness answered, "yes sir." Question. "What did he say?" This was also objected to by the defendant's counsel, and admitted by the court, and the defendant's counsel excepted, and the witness answered, "he said he was not feeling well."

Doubtless this was too long after the injury, to authorize the declarations of the plaintiff as to the state of his health to be given in evidence in his own behalf, in chief. But the defendant was attempting to prove, by the acts of the plaintiff, that his spine was not injured as claimed by him, and I think the rule is, in such cases, that when one party gives in evidence the act of his opponent, it is always competent for the other side to prove what he said at the time of the act done, to qualify the effect which would be given to the act, if standing alone. It does not necessarily do away with the effect to be given to the act proved; but it is for the jury to judge of it in connection with the act proved, and to give it as much or little weight as they think it is entitled to. And when a party has given in evidence the act of his opponent, he has no right to complain that what was said is admitted, as well as what was done.

As to such act, it is part of the *res gestæ*, and just as competent to be taken in conection with acts which the defendant proved he then did, as it would be to prove his declarations at the time of the accident itself, of the pains which he then suffered. And it makes no difference that it occurred after the commencement of the action, so long as it took place at the time when the act, proved by the defendant, was done.

The plaintiff's counsel (against an objection and exception) was allowed, on cross-examination, to ask Henry D.

Didama, a physician and surgeon, who had at the instance of the defendant examined the plaintiff, and who was sworn on the part of the defendant, "whether, upon a statement of the symptoms, and knowledge of the fact that he had a fall, or something of that kind, that would naturally produce concussion (of the spine) would you treat him for it, and believe he had it, without any outward mark." The witness answered, "yes, we would treat a patient that said he had this difficulty, but we would examine him further than his mere statement, of course." I think this was entirely competent evidence. The defendant had proved by the witness, on his examination in chief, that he had examined the plaintiff, and had also proved by him the declarations which the plaintiff then made of his condition and about his case; and the question which was objected to, was concerning statements which a patient should make to his physician or surgeon when he was first called to attend to the case. There can be no question, upon authority, that such declaration of the patient can be given in evidence for him in chief, and very little doubt that the evidence which was called out, was also competent.

Doctor A. B. Shipman was called as a witness for the defendant, and testified that he had recently examined the plaintiff, and gave as his opinion that the spinal cord of the plaintiff was not injured. He also testified at some length, on his examination in chief, and also on his cross-examination, in reference to the symptoms accompanying such injuries to the spine; and on cross-examination he testified that he had been for many years consulting surgeon for the defendant, and that at the request of the defendant he examined the cases of the two Kinneys, who were injured by this same accident. He was then asked, on the part of the plaintiff, whether they were both cases of spinal affection; to which the defendant's counsel objected. The court held that a question of his skill was involved, and that the plaintiff had a right to cross-examine

him in regard to it, and allowed the question; to which the defendant's counsel excepted, and the witness testified that he considered theirs cases of concussion affecting the spine and nerves generally, and testified to their appearance, and his opinion of the extent of their injuries. I agree with the learned judge that this testimony was competent. It was intended as a test of the correctness of his opinion in the case of the plaintiff, and whether it resulted in strengthening or weakening his testimony in chief, neither party had any cause to complain of it. It was for the jury to weigh the credit to be given to him and all the other witnesses who expressed opinions in the case.

I think, upon the whole case, the motion for a new trial was properly denied; that the order appealed from should be affirmed; and that judgment should be entered for the plaintiff upon the verdict.

Judgment accordingly.

[ONONDAGA GENERAL TERM, October 6, 1868. *Foster Mullin,* and *Morgan,* Justices.