## *RICKER *v.* FREEMAN.

Where B seized A by the arm and swung him violently around two or three times, then letting him go, and A having thus been made dizzy, involuntarily passed rapidly in the direction of and came violently against C, who instantly pushed him away, and A then came in contact with a hook, and sustained an injury,—*held*, that A might maintain trespass *vi et armis* against B.

There was no error in the following instructions to the jury: "That they should inquire who was the first actor or the procuring cause of the injury to A; that B would be liable if the wrongful force which he gave A carried him on to the hook, or if such force, combined with the new force given to him by C, produced the result; but if the jury should find that the injury received by A resulted entirely from the push of C alone, unassisted by the act of B, then B would not be liable; or, in other words, if the original force given to A by B had ceased, or time was given to C for reflection and deliberation before he gave his push, then B would not be liable; that the jury should determine whether the force, originally commenced by B, did at any time cease, and whether it was not directly continued up to the time A struck the hook by the direct agency of B, C lending his aid wittingly or unwittingly to the injury, or whether C, by pushing him from his person, did more than to act in self-defence, and was not justified under the circumstances, in order to save his person and himself from present danger; that the jury should determine, also, whether, from the time A was first seized by B and until the injury was done, he could exercise any self-control over his own person, or could in any way have prevented what happened to him."

Where an injury is the result of two concurring causes, one party in fault is not exempted from full liability for the injury, although another party may be equally culpable.

TRESPASS, by William N. Ricker against Edmund J. Freeman. The plaintiff's declaration alleged that "the said Freeman, at Dover, on the 18th day of October, A. D. 1858, with force and arms made an assault upon plaintiff, and beat, bruised, wounded, and ill treated him, and cast and threw him with great violence against and upon a coat and hat hook, which penetrated the left side of the neck of the plaintiff, severely wounding and lacerating the skin, muscles, and blood vessels, causing violent bleeding, great pain, soreness, and swelling, insomuch that the plaintiff's life was despaired of for a long space of time, viz., for the space of two months; and in consequence of said wound, the plaintiff became greatly deformed, weakened, and disabled

---

* This case was decided June term, 1870.

in his spine, neck, face, eyes, and other parts of his head, and greatly injured in his hearing, voice, and speech, all which continues hitherto and is likely to be permanent; and also, plaintiff was put to great expense for nursing and medical attendance while laboring under the effects of said wounding, viz., the sum of $200.00; and other injuries to the plaintiff the defendant then and there did against the peace, &c. The evidence in the case tended to show, that on the 18th of October, A. D. 1858, the plaintiff was a pupil in the grammar school, kept in the lower part of the school-house located in the north part of the village of Dover; that he was then some over thirteen years of age; and that the defendant then attended the high school, kept in the second story of the same house, at the same time, being then over sixteen years of age. That there was a common entry way at the foot of the stairs, which communicated with the upper story, and from which was the door that opened into the grammar school, and another down into the cellar. There was one common door also, which allowed the scholars of both schools to pass from the outside into the entry. Hooks of iron, for the purpose of hanging up the coats and hats of the scholars, were located around the easterly and northerly sides of this entry. These hooks were fastened into cleats, which were made fast upon the sides of the building. Plaintiff's testimony tended to show, that in the afternoon of the aforesaid day he went alone to school, and as he came into the school-house yard he saw the defendant standing in the entry, looking out from the north side of the entry door, and that he dodged back out of sight, and as plaintiff stepped into the door, the defendant caught him by the right arm or wrist, with both of his hands, and swung him violently round two or three times. "This made me dizzy. He let me go, and I passed off in a north-easterly direction and came violently against the Townsend boy, and Townsend pushed me off. When defendant was whirling me round, sometimes my feet were not on the floor, and sometimes they were. When Townsend pushed me off, I went against the hat hook. It entered under my left ear. It split out of the casing, broke off, and was left in my neck. I rose up, stood in the middle of the entry, and the hook came out; how, I cannot tell. The effect was to benumb me. Freeman had run up stairs, but soon came to my assistance, as did Haynes and Morse, the masters of the schools. I discovered a good deal of blood flowing from the wound. Morse put his finger on the wound, and succeeded in stopping the blood at the time. Drs. Hill and Thompson were sent for. They came and dressed the wound. The left side of my face and neck swelled very much. It was awful painful. In about two weeks from that day, the wound commenced bleeding again, the swelling then being very large. The wound bled freely for about fifteen minutes before it was stopped by Dr. Hill. It would break out as often as once a day, and sometimes two or three times in a day. It so continued breaking out for two or three months before it finally stopped." Upon the manner in which the injury was procured, upon his cross-examination the witness further states, that he was so benumbed by the injury that he did not feel any pain the first day.

" But I was frightened when I saw the blood running. I think I screamed murder, for I thought I was going to bleed to death right there. Think there might have been eight or ten boys in the entry at the time. I never stated the hook was on the east side of the entry, which hurt me. The hook was on the north side of the entry. Townsend was standing at the time within two or three feet of the north-east corner of the entry. I am confident I was not standing in the entry long before Freeman seized me. My hat dropped off when he was swinging me round. I asked him to let me alone. Freeman stood at the time some eight or nine feet east of the banister post which stood at the corner of the stairs. I think neither hand was on the banister post. Was going swift when I came up against Townsend. Townsend pushed me off directly at right angles towards the hook. He pushed me lightly as I suppose,—don't know certain. He told me to get off his toes. I suppose I hurt his toes some. I might have struck against the ceiling, then landed upon the hook. It might be six or seven feet that I was pushed. It does not appear to me to be more than two or three seconds from the time Freeman seized me until I was on the hook."

Thomas A. Trefethen, plaintiff's witness, confirmed plaintiff as to the mode and manner in which the injury occurred. Says he was standing in the entry. " Saw Ricker come into the door. Saw Free-man catch hold of him immediately, by his right arm, and throw him round with both hands. Cannot tell how many times; cannot tell whether more than once. Swung him a pretty good jog. Ricker struck against David Townsend when defendant let go, and from Townsend Ricker fell against the hook. I should think Ricker came against Town-send pretty hard. Townsend was standing two thirds of the way from the door to the north-east corner of the entry. Witness stood two feet nearer the door than Townsend. I did not see Townsend do any-thing when Ricker came against him. Should think it was three or four seconds from the time when Freeman first seized plaintiff until he got to the hook. When he struck Townsend his direction was changed. Townsend was a stouter boy than Ricker. Do n't remem-ber which way Freemen went when he let go. I saw Ricker fall and yank a little; left the entry, and went outside. He was on the hook, as I supposed. I was frightened. I could not stay there. The hook was at the end of the entry, where the cellar door opened. I can swear to the location of the hook. It was on the north side of the en-try. Freeman was standing about two feet from the banister when Ricker entered the outside door. There were eight to twelve boys in the entry. I was twenty-two years of age last December."

Charles H. Hussey, now twenty-five years of age, was then going to the grammar school, and was in the entry. " Heard a scuffling on the floor, turned round, saw Ricker standing up in the floor, with the hook in his neck. The hook came out, or he pulled it out. The blood gushed out of the wound. It spirted out in jets, as often as a person's heart would beat. I saw some one run up stairs, when I looked round. Some one took Ricker out to the front steps. I cannot state

how long I had been in the entry. Had not seen Ricker before that time. Ricker was standing in the floor when the man ran up stairs."

Mrs. H. P. Ricker was called by plaintiff, and testified that she was at home when her son was brought home bloody. " His face was done up. The blood had stopped. Drs. Hill and Thompson called. The wound was dressed. The swelling commenced that night. His neck swelled very bad. The character of it was very hard. Dr. Hill called as often as once a day. We poulticed the swelling. It commenced bleeding in two weeks from the day it was hurt. With the assistance of Dr. Hill it was stopped with difficulty. It would break out bleeding for days, weeks, and months, sometimes every day, sometimes not so often, and sometimes three or four times in a day. For two first weeks I took care of him myself. His aunt came up and assisted us for some two weeks. He was not allowed to be left alone a minute. I was with him to nurse him a great deal of the time. He was in a great deal of pain. He was in his bed and could not sit up. The swelling continued the same and did not cease. He complained of pain a good deal in his face, during all the time the swelling contin- ued. (His complaints of pain were excepted to by defendant's coun- sel, but ruled in by the court as proper so long as the swelling con- tinued.) Plaintiff is not able to work like other boys and men since his injury. If he works one day he is sick afterwards for two or three days. Should not think he has worked three months in a year since the injury. He was not sick often before this injury, nor was he de- formed in his face, &c. Plaintiff wanted to see Freeman during his sickness, and Freeman came to see him. I asked Freeman if he hurt him, and he said he did. I asked him what he did it for. Freeman said he was *fooling* with him. Freeman was much older and stronger than the plaintiff." The defendant said : " I was attending the High school, Oct. 18th, 1858. The afternoon bell had rung half-past one o'clock. I ran rapidly from out of doors into the entry. First saw Ricker standing at the foot of the stairs. When I came to the stairs I had to turn round to the right to go up stairs, making nearly a right angle. I put my right hand on to the banister post, and took hold of Ricker with my left hand, either to put him out of the way or help my own case. I think I must have taken hold of his left arm. He swung round the post. Ricker went behind me towards the north. He was not lifted from his feet. He went forward swift, about five or six feet. Saw Ricker go up where Townsend was standing at this time. Townsend pushed him directly east towards the end of the building. I continued on up stairs, holding on by the banister. I could see Ricker go some two feet, when Townsend pushed him. I did nothing more than throw him behind me. He did not go once clear round. I was facing the west when I took hold of him. When going up stairs, heard some one scream very loud. I returned as fast as I could. Found Ricker standing about three feet from outer door. He was helped outside ; Haynes and others came to his assistance. There were scarce any hooks off. We had an examination by teachers and others that afternoon. No. 33 was gone, and was in Ricker's neck.

Never heard it was a hook from off the north end of the entry. There was one gone on east side of entry. Not positive about the number. There were as many as fifteen boys in the entry at the time."

Alonzo F. Goldsmith, now twenty-six years old, says he was standing about six stairs from the bottom. Says the scholars were coming into their respective schools. "Saw Freeman come in from outside. Ricker was then in the entry, standing near the lower part of the banister. Saw Freeman take hold of him, and give him a sling round behind him. Freeman took hold of him with his left hand, his right hand being upon the post of the banister.. Then Freeman came up stairs towards me. Freeman grabbed him and sent him with sufficient force to bring him against Townsend, going between four and five feet. Ricker's face was towards Townsend. Ricker went in a northerly direction, some west. Townsend then pushed him due east, in a different direction from what he was going. Freeman took hold of Ricker's arm, or wrist. I saw the hook gone on the easterly side of the house within an hour of the time. Saw it in Ricker. Could not say whether any hook was gone on the north side of the entry or not. I did not take notice of that side. Saw Ricker standing in middle of floor, and some blood on his neck."

Among other things, the court told the jury that this action would lie, if they found plaintiff's injury had occurred by reason of the unlawful touching or seizure of the plaintiff's person by the defendant. This touching of the person may be either in an angry or insolent manner, or may be in a rude, rough, violent manner. The law regards the person of every peaceable citizen as sacred. The wrongful act is sometimes exemplified by jostling one out of the way, or by pushing another against him, or by sending a squib or other substance or missile against or upon another, by means of which injury is produced.

It is essential to this form of remedy that the act be proved to have been done with force, the degree of force being not material. While the original force so continues as to become the proximate cause of the injury, the effect is immediate, and this action will lie. In trespass, all concerned in the wrongful act producing the injury are liable as principals. Hence, all who procure such unlawful act to be done, or in any way participate therein,—all aiding, abetting, or assisting therein,—are, in law, trespassers.

To maintain this action, it was not essential for the plaintiff to prove that the act was done with any wrongful intent by the defendant, it being sufficient, if it were done without a justifiable cause or purpose, though done accidentally, or by mistake. Where two persons voluntarily engage in a wrestling match or a scuffle, it may be presumed that each will take the necessary or incidental risks of the play, and so long as such amusement is conducted fairly, and without undue harshness on either side, any accident occurring to either party will generally be considered as inevitable or without remedy. In this case the jury might inquire whether, under the evidence before them, the plaintiff gave any previous assent or invitation to the onset made upon

him by the defendant. They would also inquire who was the first actor, or the procuring cause of the injury to the plaintiff. Freeman would be liable if the wrongful force which he gave Ricker carried him on to the hook, or if such force combined with the new force given to him by Townsend produced the result. But, if the jury should find that the injury received by the plaintiff resulted entirely from the push of Townsend alone, unassisted by the act of Freeman, then defendant would not be liable; or in other words, if the original force given to Ricker by Freeman had *ceased*, or time was given to Townsend for reflection or deliberation before he gave his push, then Freeman would not be liable. The jury would determine whether the force originally commenced by Freeman did at any time cease, and whether it was not directly continued up to the time Ricker struck the *hook* by the direct agency of Freeman, Townsend lending his aid wittingly or unwittingly to the injury, or whether Townsend, by pushing him from his person, did more than to act in self-defence, and was not justified under the circumstances, in order to save his person and himself from present danger. The jury would determine, also, whether from the time Ricker was first seized by Freeman, and until the injury was done, he could exercise any self-control over his own person, or could in any way have prevented what happened to him.

The defendant's counsel asked for special instructions, as follows:

1. If Townsend pushed Ricker, and it was the force resulting from this push which carried him upon the hook, Freeman is not liable for the injury in this action.

2. If the force given by Freeman had ceased, and it was the force given by Townsend which carried Ricker upon the hook and not a combination of the two forces, Freeman is not liable in this action.

3. Freeman cannot be liable in this action, unless the force which he gave Ricker carried Ricker on to the hook, or unless it combined with the force given by Townsend, and the two combined forces carried him upon the hook.

4. Unless Townsend was in some way in danger, and the new motion caused by the force he gave Ricker was necessary for his self-protection, and the injury would not have resulted to Ricker but for the new motion so necessarily given by Townsend, Freeman is not liable.

These instructions the court declined to give, except as modified by the preceding charge; and the defendant excepted.

The plaintiff did not ask for exemplary or vindictive damages, nor anything for the expense of nursing plaintiff while sick, nor for the physicians' bills.

The jury having rendered their verdict for the plaintiff, the defendant moved to set the same aside.

*Wheeler*, for the defendant.

This action is grounded mainly upon the authority of *Scott* v. *Shepherd*, commonly called the *squib* case. In the text books, the principle is stated—"if a wild beast or other *dangerous thing* be turned out or put

in motion and mischief immediately ensue,"—2 Saund. Pl. and Ev., pt. 2, 1,084; 1 Chitty Pl. 127,—" so where a lighted squib was thrown into a market-place, and afterwards thrown about by others in *self-defence.*" The lighted squib, made of gunpowder, &c., was regarded as a *dangerous thing,* was thrown in *self-defence;* and it was upon the ground that it was a *dangerous thing* and subsequently thrown in *self-defence,* that the one who first put it in motion was held liable in trespass, and this by only a majority of the court. Had it been a ball, a stone, or other missile, which at rest would have been harmless, there could have been no justification in again putting it in motion, and the defendant in that case would not have been chargeable. DeGrey, C. J., says: "It is one of those cases wherein the line drawn by the law, between actions on the case and actions of trespass, is very nice and delicate." The principle, then, we submit, could hardly be extended to the case at bar.

Had the thing thrown been a watch instead of the plaintiff, and when it came to rest it was uninjured, the liability of the person who threw it would have ceased, and if subsequently thrown and destroyed, the liability would be upon the person who last threw it. The plaintiff was no more a dangerous thing than the watch; the motion given by the defendant had ceased; the plaintiff when he came up against Townsend was at rest, and would have remained so, but for the force given him by Townsend. Such is the evidence and such must have been the finding of the jury upon the facts.

The action of Townsend cannot be justified. There could be no question of fact as to his acting in *self-defence.* The law would give him no time for reflection. His action was an independent act, an independent trespass, in no degree justified in law by anything that had been previously done by the defendant. There were no facts in the case which could have justified the jury in finding that the force given by Freeman continued after the plaintiff came up against Townsend, or that that force combined with the force given by Townsend and carried the plaintiff upon the hook. The case finds that the force given to the plaintiff by defendant carried the plaintiff up against Townsend; that Townsend pushed the plaintiff in another direction; and the plaintiff says: "he pushed me off directly at right angles towards the hook." Some of the other witnesses made the angle less than a right angle; none more. The force given by the defendant must have ceased when the plaintiff came against Townsend, and the force given by Townsend was a new force, and was alone the force which caused the injury. The jury must then have founded their verdict upon the ground that Townsend imparted the force before he had time for reflection, or that he did it in self-defence, neither of which is supported by authority or is tenable. This was a case in which the jury were liable to be misled by their sympathies, and the law should not only have been correctly stated, but clearly stated. The defendant's liability should have been negatively as well as affirmatively stated, that the jury might be carefully guarded against misapprehension.

*Christie*, for the plaintiff.

I. The defendant's counsel, at the trial, requested the court to give certain instructions to the jury, all of which were in substance, though not in the same words, given to the jury in the charge as reported. And, indeed, we do not perceive or understand that any fault is found with or exceptions taken to the charge as given.

II. The defendant, in his brief, erroneously assumes that the plaintiff grounds his action on the case of *Scott* v. *Shepherd*. This is entirely erroneous. Neither the plaintiff nor the court did any such thing, as will be obvious upon examination of *Scott* v. *Shepherd* and of the evidence and charge of the court as reported in this case.

The case was tried, and put upon the ground that the force or impetus given to the plaintiff by the defendant, when he seized, whirled, and slung him away, as in the report is shown, continued in unceasing operation until it landed him upon the hook and drove it into his neck, either *alone* or in combination with the force or impetus (if any) communicated by Townsend, and was thus, in whole or in part, the direct and proximate cause of the injury complained of. And that so the defendant, either *solely* or *jointly* with Townsend, directly inflicted the injury, and is consequently answerable for the whole in trespass.

The defendant in his brief misrepresents the facts, makes unauthorized assertions, and complains of the action and finding of the jury, and says there were no facts in the case that would have justified the jury in finding that the force given by Freeman continued after the plaintiff came up against Townsend, or that that force, combined with the force given by Townsend, carried the plaintiff on to the hook. We conceive and insist that there was abundant evidence in the case to authorize and justify the jury in coming to such result. The testimony of the plaintiff, and of Thomas A. Trefethen, tends strongly to such a result. And when, in addition thereto, we take into consideration the testimony of Mrs. H. P. Ricker, the plaintiff's mother, no doubt can remain as to the sufficiency of the evidence to lead to such a result.

Mrs. Ricker testified that " the plaintiff wanted to see Freeman during his sickness, and Freeman came to see him. I asked Freeman if he hurt him (meaning the plaintiff), and he said he did. I asked him what he did it for. Freeman said he was *fooling* with him."

Freeman was a witness, and heard this testimony of Mrs. Ricker and did not deny or contradict it, but thus admitted its truth. He did not *then* say or pretend that Townsend inflicted the injury, but said *he* did it. And, by not contradicting this statement of Mrs. Ricker, Freeman in fact practically admitted, before the jury on the trial, that *he did* inflict the injury complained of on the plaintiff. Is not this enough to justify the jury in coming to the result they did? Could they, under this admission, come to any other result? This admission, too, clearly shows that the action is rightfully *trespass*.

Again: the court will not, *after verdict*, look with eagle eyes to see whether the evidence applies exactly or not to the case; but if the plaintiff has obtained a verdict for such damages as he deserves, they

will establish it if possible. *Slater* v. *Baker*, 2 Wils. 359. The doctrine of this case is stated with approbation by Judges NARES and BLACKSTONE, in *Scott* v. *Shepherd.*

No motion was, at the trial, made for a non-suit, on the ground that the evidence would not sustain trespass. Nor was there, among the exceptions filed after verdict, any one alleging that the verdict was without evidence to sustain it, or that upon the evidence trespass would not lie.

In short, we contend and submit that there is no legal ground for setting aside the verdict, and that judgment should be rendered thereon.

FOSTER, J. Various exceptions were taken at the trial with regard to the allowance of certain amendments and the admission of certain evidence, which, not being insisted upon in argument, may be regarded as abandoned. Without adverting to them in detail, we may remark that none of them are in our opinion tenable; and subsequent reflection and examination of the exceptions by the defendant's counsel have probably led him to the same conclusion.

The first objection that is now insisted upon relates to the form of the action. In all cases where the injury is done with force and immediately by the act of the defendant, trespass may be maintained; and where the injury is attributable to negligence, although it were the immediate effect of the defendant's act, the party injured has an election either to treat the negligence of the defendant as the cause of action, and declare in case, or to consider the act itself as the cause of the injury, and to declare in trespass. *Dalton* v. *Favour*, 3 N. H. 466; *Blin* v. *Campbell*, 14 Johns. 432.

Mr. Greenleaf, 2 Evid., § 224, says : "The distinction between the actions of trespass *vi et armis* and trespass on the case is clear, though somewhat refined and subtle. By the former, redress is sought for an injury accompanied with actual force ; by the latter, it is sought for a wrong without force. The criterion of trespass *vi et armis* is force directly applied, or *vis proxima*. If the proximate cause of the injury is but a continuation of the original force, or *vis impressa*, the *effect* is immediate, and the appropriate remedy is trespass *vi et armis*. But if the original force, or *vis impressa*, had ceased to act before the injury commenced, the effect is mediate, and the appropriate remedy is trespass on the case." And see 1 Hilliard on Torts 97, 105.

Wherever an act is unlawful at first, trespass will lie for the consequences of it. *Reynolds* v. *Clarke*, Strange 634.

*Malus animus* is not necessary to constitute a trespass. "The defendant was uncocking a gun, and the plaintiff standing to see it : it went off and wounded him ; and at the trial it was held that the plaintiff might maintain trespass." *Underwood* v. *Hewson*, Strange 596.

In *Weaver* v. *Ward*, Hobart 134, it is said, "no man shall be excused of a trespass except it may be judged utterly without his fault." And in *Scott* v. *Shepherd*, 2 W. Black. 892, it is said, "the natural and probable consequence of the act done by the defendant was injury to somebody, and therefore the act was illegal at common law. Being

therefore unlawful, the defendant was liable to answer fo\
quences, be the injury mediate or immediate ;" and trespass w\
to lie in that case.    And see *Jordan* v. *Wyatt*, 4 Grat. 151.

But whether the lawfulness or unlawfulness of the act be the cri\
terion, it is not necessary to determine in this case.    Probably it
would not be so regarded ; though the opinions of learned judges are
somewhat at variance upon this point (see *Scott* v. *Shepherd*, 1 Smith's
L. C. 212 ; *Reynolds* v. *Clarke*, Strange 635 ; 1 Hilliard on Torts 107),
because, in the present case, although no malice is attributed to the
defendant, still there can be no denial that his interference with the
plaintiff, with force and arms, *was* an *unlawful* assault, and, although the
ultimate effect and injury may not be regarded as the *inevitable* result
of the original unlawful act, still, if the result was a *consequence* of that
act, the plaintiff is entitled to maintain trespass.    1 Chitty Pl. 125–
130 ; *Cole* v. *Fisher*, 11 Mass. 137 ; *Smith* v. *Rutherford*, 2 Serg. &
Rawle 358 ; *M'Allister* v. *Hammond*, 6 Cow. 342 ; *Codman* v. *Evans*, 7
Allen 433 ; *Murphy* v. *N. Y. & N. H. R. R.*, 30 Conn. 187.

But if the appropriateness of the remedy chosen by the plaintiff were
not, as we think it is, free from doubt, we should nevertheless be in-
clined to sustain the action if substantial justice should seem to re-
quire it, on the principle stated in *Slater* v. *Baker*, 2 Wils. 359, where
it is said : "The court will not, *after verdict*, look with eagle eyes to see
whether the evidence applies exactly or not to the case ; but if the
plaintiff has obtained a verdict for such damages as he deserves, they
will establish it if possible."

We would not encourage looseness in pleading, and would always
endeavor to avoid the confusion which must inevitably result from
throwing down the boundaries of actions ; but the refined though per-
haps clear distinction between the actions of trespass and case should
not be strenuously regarded, if injustice would result thereby.    "The
distinction," says Mr. Perkins, in his notes to Chitty 126, "between
trespass and case is in effect broken down in Massachusetts," and it is
abolished in Maine by statute.    Maine Rev. Stat., ch. 82, § 13.

The more important inquiry relates to the charge and instructions of
the court to the jury.

They were directed to inquire who was the first actor or the procuring
cause of the injury to the plaintiff.    They were told that the defendant
would be liable if the wrongful force which he gave the plaintiff car-
ried him on to the hook, or if such force, combined with the new force
given to him by Townsend, produced the result.    But if they should
find that the injury received by the plaintiff resulted entirely from the
push of Townsend alone, unassisted by the act of the defendant, then
he would not be liable ; or, in other words, if the original force given
to the plaintiff by the defendant had ceased, or time was given to
Townsend for reflection or deliberation before he gave his push, then
the defendant would not be liable.    The jury would determine whether
the force originally commenced by the defendant did at any time cease,
and whether it was not directly continued up to the time the plaintiff

hook, by the direct agency of the defendant, Townsend ——his aid wittingly or unwittingly to the injury; or whether ——isend, by pushing him from his person, did more than to act in self-defence, and was not justified under the circumstances in order to save his person and himself from present danger. The jury would determine also whether, from the time the plaintiff was first seized by the defendant and until the injury was done, he could exercise any self-control over his own person, or could in any way have prevented what happened to him.

The substance of these instructions, so far as the defendant's exceptions render them material to this inquiry, is, that if the force or impetus given to the plaintiff by the defendant, when he seized, whirled, and slung him away, continued in operation, either alone or in combination with the force or impetus, if any, communicated by Townsend, until this force or impetus impaled the plaintiff upon the hook, and so the defendant, either solely or in conjunction with Townsend, inflicted the injury, such injury was the direct and proximate result of the defendant's original wrongful act, and he must be answerable for the consequences.

It is quite clear that but for the defendant's wrongful act, the plaintiff would have sustained no injury. It is equally clear that, under the instructions of the court, the jury must have found, in order to charge the defendant, that the original force or impetus given to the plaintiff had *not* ceased, and that time was not given Townsend for reflection or deliberation before he pushed the plaintiff off, and that Townsend, either in self-defence or in obedience to an uncontrollable impulse and instinct, became the involuntary means of continuing the original force and impetus which cast the plaintiff upon the hook. They must also have found that, after the first assault by the defendant, the plaintiff was incapable of exercising self-control or preventing the result.

We have seen that malice is not essential to the maintenance of trespass for an assault, but that the action is supported by a negligent act and pure accident, if the negligent or accidental act is also a wrongful act. And we think the principle is clearly established, that negligence may be regarded as the proximate cause of an injury, of which it may not be the sole nor the immediate cause. If the defendant's negligent, inconsiderate, and wanton, though not malicious act, concurred with any other thing, person, or event, other than the plaintiff's own fault, to produce the injury, so that it clearly appears that, but for such negligent, wrongful act, the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent, wrongful act may not have been t' e *nearest* cause in the chain of events or the order of time. Shearman & Redfield on Negligence, § 10, and cases cited in note.

In trespass for an assault, it cannot be essential that the defendant should *personally* touch the plaintiff; if he does it by some intermediate agency, it is sufficient. The intermediate concurring act will not purge the original tort, nor take assignment of the responsibility.

In *Jordan* v. *Wyatt*, 4 Grattan 151, Baldwin, J., says : " The terms ' immediate' and ' consequential' should, as I conceive, be understood, not in reference to the time which the act occupies, or the space through which it passes, or the place from which it is begun, or the intention with which it is done, or the instrument or agent employed, or the lawfulness or unlawfulness of the act, but in reference to the progress and termination of the act,—to its being done on the one hand, and its having been done on the other.    If the injury is inflicted by the act at any moment of its progress from the commencement to the termination thereof, then the injury is direct or immediate ; but if it arises after the act has been completed, though occasioned by the act, then it is consequential or collateral, or, more exactly, a collateral consequence."

The defendant objects particularly to that part of the charge in which the jury were told that " if the original force given by Freeman had ceased, or time was given Townsend for reflection or deliberation before he gave the push, then Freeman would not be liable."    And he contends that, under these instructions, the jury must have found, either that Townsend's force combined with the original impetus given by the defendant, or that Townsend did not have time for reflection and deliberation before he gave the push ; that the jury might have decided the case upon the latter consideration, which, he says, would be wrong, because Townsend was bound to reflect and deliberate.    The force projected by the defendant having ceased, as he contends, the new force given by Townsend was original, because not demanded for the self-defence of Townsend ; that the plaintiff, not being a dangerous missile or instrument, like the famous *squib* in *Scott* v. *Shepherd*, Townsend had no right to push him off; and if he did so, to the plaintiff's injury, the result cannot be considered the proximate or immediate act of the defendant, and so he is not answerable.

If it be suggested that human nature *instinctively* repels the forcible contact of a person or thing thrown or falling against a person, the defendant replies that the person thus assailed must control that impulse, and must take time for reflection and deliberation before he can act ; or, at any rate, if he does not, the projector of the original force is exonerated, because the original force has ceased and stopped.    We think this proposition is altogether too refined.

A man instinctively repels violent contact with a foreign and external substance.    He can no more control the impulse to ward off and repel a sudden and unlooked for blow, than an unreasoning, inanimate, but elastic substance can control, by superior power of gravity, the natural repulsion and rebound of the thing thrown or falling violently upon or against it ; and it can hardly be said that the original force has ceased or stopped at all, during the inconceivably sharp point of time interposed between the contact and the repulsion of a blow striking an inanimate elastic object, or an object animate, sentient, but also involuntarily repellant.

The substance of the charge in this particular was, that if Townsend instinctively pushed off the plaintiff, Townsend's push was the defend-

ant's act.  This was correct.  The act of Townsend was the direct and inevitable consequence of the defendant's act.  The defendant set in motion the train of causes ·which ·led directly to the unfortunate result.  In the language of DeGrey, C. J., in *Scott* v. *Shepherd*, " I look upon all that was done subsequent to the original throwing, as a continuation· of the first force and first act.  The new direction and new force flow out of the first force, and are not a new trespass."

The act of Townsend is involuntary.  Committing no voluntary wrong, he is but a link in the chain of causes of injury of which the defendant is the wrongful author.  A man pushes another against a board, which, springing, repels the contact with the man, and throws the latter against a rock or upon the ground.  It is the act and fault of the original assailant and not of the board.  The man and not the board is liable.  The result in law is the same whether the intermediate concurring object is a board or a boy, if the boy has no more volition than the board.

The defendant is to be regarded as " one who negligently sets mechanical forces in operation beyond his power to stop or safely direct, or as one who carelessly puts destructive implements or materials in situations where they are likely to produce mischief."  *Underhill* v. *Manchester*, 45 N. H. 218.

The natural, innocent impulse of Townsend in this case is a natural force in Townsend, set in motion by the defendant, and in no essential particular differs from the natural forces of the material world.  *Guille* v. *Swan*, 19 Johns. 381.

It was not necessary, therefore, as we regard it, that the jury should have come to the conclusion that Townsend pushed off the plaintiff in self-defence.  They *might* have done so, upon the evidence ; and upon *such* finding the defendant would clearly be liable.  Such a condition of things would bring the case precisely within the doctrine of *Scott* v. *Shepherd*, and within the principle declared by Gould, J., when he says : " I think the defendant may be considered in the same view as if he himself had personally thrown the squib in the plaintiff's face. The terror impressed on Willis and Ryal excited self-defence, and deprived them of the power of recollection.  What they did was therefore the inevitable consequence of the defendant's unlawful act.  What Willis did was by necessity, and the defendant imposed that necessity upon him."

There is still another aspect of the case, in which, if it were possible to regard Townsend as contributing to the unfortunate injury of the plaintiff by his own *negligence* and *careless* warding off the person of the plaintiff, the result would still be not more favorable for·this defendant.  Though a third person's negligence may have contributed to the result, so that such third person might even be liable to answer in damages, still the original author of the mischief will not any the more be excused.

In *Chapman* v. *The New Haven R. R. Co.*, 19 N. Y. 341, an action was sustained against the defendant for an injury occasioned to the

plaintiff by a collision between a train of cars upon its road and one upon the Harlem railroad, and which would not have occurred but from the negligence of the latter road, in the cars of which the plaintiff was a passenger; thus, in effect, holding that where the injury was the result of two concurring causes, one party in fault is not exempted from full liability for the injury, although another party was equally culpable.

And in *Peck* v. *Neal*, 3 McLean 22, the driver of a coach was considered liable to the plaintiff for an accident happening through his negligence, although the negligence of the driver of the coach in which the plaintiff sat contributed to the accident, and although, it was said, an action might lie against the latter.

And see *Brehm* v. *The Great Western Railway*, 34 Barb. 274, and *Mott* v. *The Hudson River R. R.*, 8 Bosw. 345. In the latter case, the plaintiff's buildings were on fire; and while the firemen were endeavoring to extinguish it, the cars of the defendant passed over the hose, cutting and rendering it unfit for use, in consequence of which the buildings were consumed. It was held, that if the act were done by the concurring negligence of the defendant and the firemen, in such sense that the hose would not have been cut if either had been free from negligence, the plaintiff was entitled to recover.

Upon all these considerations, we are of the opinion that there was no error in the instructions of the court; and that the plaintiff may maintain trespass for the injury which he has sustained.

*Judgment on the verdict.*